The issue before this court has substantial revenue impact. You better say for the record just what your name is and who you represent. I'm Joan Oppenheimer, attorney for the commissioner of internal revenue in this case. The issue before this court has substantial revenue impact. There are currently pending before various courts in the United States 33 cases. Counsel, I don't quite get how you get around colony. Colony was decided under an old revenue statute. True, but is it materially different in the respects that bear on this case? Yes, it is materially different. And the Supreme Court recognized that the two statutes were different when it said that this issue before the court in colony, though resolved for years after 1954, remained of substantial administrative importance for the years under the 1939 code. The court also described the Revenue Act of 19 § 275C of the Revenue Act of 1939 as being ambiguous and it characterized. Isn't the phrase omits from gross income the same now as it was then? Yes, it is, Your Honor, but in the 1954 code. And the Supreme Court said the issue is whether you focus more heavily on the word omits or on the word from gross income. The Supreme Court did say that, Your Honor, but it also described section 275 as ambiguous. It described section 6501E of the Internal Revenue Code of 1954 as unambiguous. What I'm having trouble with is the language that the Supreme Court construed in colony 275 is identical to the language in the 1954 code, the main section of it. And I don't see how we get around the construction that the Supreme Court put, why that wouldn't be the same on the identical language in the 1954 code, especially since Congress enacted the 6501 before the Supreme Court decided colony. Well, as the Court of Federal Claims said in Salmon Ranch, since the two statutes contain that same language, for the court to describe section 275C of the Code of 39 as ambiguous and to describe section 6501E as unambiguous, as a matter of logical consistency, there has to be a difference between the two sections. Why couldn't the Supreme Court just say, well, I see Congress has provided some clarification that we're harmonious with, which was, I think, the word they used. That is exactly what it did say. It said the result we reach here is harmonious with the unambiguous language of the Internal Revenue Code of 1954. Yet it described the 275C of the Code of 39 as ambiguous. So obviously there is a difference between the two sections, and the difference consists in the addition in the 1954 code of the adequate disclosure provision and the gross receipts provision. The gross receipts provision narrows, significantly narrows the definition of gross income in section 6501 to make it clear that the gross receipts provision only applies in the case of the sale of goods or services by a trade or business. Counsel, when I read the statute, it looks to me, I mean, the whole statute, not just the subsection. It looks to me as though the statute of limitations is three years, except that people try to hide income from you. It's six years. So retailers that skim off the cash and just report what they got on credit cards and checks, six years, that sort of thing. That's basically what the Supreme Court said in Colony, except that it was five years. This language at page 35 of Colony is right on the button. Now, when I look at whether, I look at the tax return here in the excerpts at 66, and there's the $23,898,000 on line 20. So they haven't hidden it from you. You know about it. And then I look on the next line, the basis, $16.5 million. Well, they attached an appendix or an addendum, what do they call it, a statement, to the tax return where they described what had happened here. And it raises two questions in my mind. First of all, it looks as though they've just flashed a light on this for you, and that we're claiming a huge basis. It's really complicated because these sorts of partnership transformations are always complicated. You're invited to audit, and it's enough money to be worth auditing. And the second thing is actually kind of a practical concern. If the basis is phony because of the sham transaction, A creates a sham corporation B and sells to B for $16 million, and then B sells to C for $24 million and claims a $16 million basis, it seems to me whatever taxes you don't get to collect against B because of the $16 million basis, you do collect from A because of their zero basis since they depreciated it all. I've got to be missing something here, and I don't know what it is. Well, first of all, the adequate disclosure question is not properly before this court because it was not decided by the district court. Well, no, it's the basis for the Supreme Court's decision in Colony for why you use the extended statute instead of the short statute. Well, actually, Colony on this point is factually distinguishable from this case because in Colony what you had was disallowed developmental expenses, which were in fact reported on the return. So everything that the IRS needed was in fact on the return. In this case, the stepped-up basis of $16.5 million was not, you know, the fact that the basis should have been or that we say it should have been zero and by a bunch of phony transactions to artificially inflate the basis, it was $16.5 million. But they told you about the phony, what you call the phony transactions in the statement. They say this is how we got there. Well, they didn't actually say that. They simply said that there was a partnership, that there was the old partnership was terminated, and then they provided a section $654 million. So there's never anything on the return that shows that the basis would have been zero had all this not have gone on. There's no more reason to be suspicious of their statement. Well, actually. I mean, it's a red light, isn't it? They're saying we got $23 million, but our basis was $16. And we got to the $16 by these transactions. And we're telling you they did some transactions with themselves. That's a red light. Well, it might be that there was adequate disclosure, but that would be a question for the court to decide on remand, because the tax court never reached that issue, having decided that the six-year statute of limitations never applied, and therefore it never reached the issue. But it's our position that since the tax court didn't decide it, that issue was not before the court. But what's the factual issue there? I think in your briefing you said that there's a material issue of fact. The historical facts are all known. We have the exact disclosure that went to the IRS. So why is there a factual issue that would prevent us from resolving that? Well, it's true that what was on the return was, in fact, decided, but it's typically the role of the tax court in the first instance to decide facts, even facts that are stipulated. Anderson v. City of Bessemer made it quite clear that even in the case of stipulated facts, that's the role of the court to decide. And it's also a question of the application of the law to the facts. We can do that. What is the disputed fact? Well, the disputed fact is whether there was adequate disclosure that on the return that the basis was stepped up from zero to $16.5 million by virtue of this creation of the new partnership, Bakersfield Resources, and then the sale of partnership interests in the old Bakersfield to Bakersfield Resources for $19 million, $16.5 million of which was translated to the oil and gas reserves. But typically, you know, the commissioner should have an opportunity to set forth what the law is as to adequate disclosure and then apply the facts to this. That has not been done here. It's our position that there was really the issue of adequate disclosure should be decided. Counsel, time is tight. So I'd like you to keep your answers more concise. However, we're going to extend the time because I don't know why in the world the clerk gave this 10 minutes. It's a big, complicated case. I missed something when you were answering questions a few minutes ago. I missed a couple of things. One is, is there any reason you wouldn't get your taxes on the $16 million gain from the first Bakersfield, even though if the basis, the $16 million basis had stood up, you wouldn't have gotten it from the second one? Well, the first Bakersfield didn't sell anything. So, therefore, we could never ‑‑ it was the second Bakersfield that sold the partnership interest. I see. And ‑‑ That would be asking my next question. Okay. But partnerships don't pay tax. So basically ‑‑ Sure, they pass it on to the partner. Right. That's correct. My next question is, your concern is that they didn't state the $23 million as gross income. No, they did state that. Our concern is ‑‑ Well, the statute says omits from gross income. Well, it's our position that they understated their capital gain by overstating their basis. That's our position. But that's not what the statute says. It says you get the six years instead of the three if they omit from gross income. Well, it doesn't say omit an item of gross income. It says omit an amount. And it's our position that an amount of gross income can be omitted by understating the gross proceeds as well as ‑‑ Let me move you along to what my question is about. It can be hard to anticipate what I'm trying to get to. They did not omit the $23 million from line 20. So line 20, the gross sales price item, does not omit the full gross sales price. The effect of the $16 million, and let's, for purposes of discussion, call it the phony $16 million basis, is to reduce the total gain to $7 million. And that gets further reduced by something not at issue here, the additional $2 million. Then the line that it carries over to on the first page of Form 4797 is not a gross income line. It's a gain line. It's for capital gains. So what I'm trying to do is if I follow your ‑‑ the Supreme Court used a purposive analysis of the statute. You're urging a more literal analysis of the statute, and that's a perfectly legitimate argument. But when I go with a more literal analysis, I have to go all the way with it. And I don't see where there's a line for income any closer than line 20, gross sales price, where they report all the money. Well, I guess I would focus the court on the use of the word amount in 65E1A as compared to the use of the word item in 6501E2, which deals with substantial omissions in the case of estate and gift tax. Section 6501E2, which unfortunately I didn't put in the appendix, is pretty much the same. E2 is the estate and gift tax. Yes, but it uses the word item instead of amount. And it uses the word item five times. You know, it has an adequate disclosure provision just like 65E1A, but again, it uses the word item. 6501E1A and little I and little I2 use the word amount. In E1A, the word amount is used twice. In E1AI, the word amount is used twice. In E1AII, the word amount is used. It says omits from gross income and amounts properly includable therein. Right. Which line of Form 4797 is the omission? Well, the omission is from capital gain. I don't have, you know, the ---- I have it right in front of me. I see a line. It would be the summary. It's the gain. It's an omission of capital gain. Section 61. What you're saying is that any omission on any line that affects the total taxes to be paid, even if the amount was disclosed before the calculation that led to that line, gives you the extended statute of limitations. No, it wouldn't apply to a deduction. It only applies to ---- Why not? Because the statute doesn't refer to deductions. It refers to an amount of gross income and Section 61E of the Internal Revenue Code. But the only line I see that's about gross income is gross sales price. Well, I ---- You have a gross, and then you have various subtractions from it that give you a net. Well, gross income is defined in Section 61 as expressly including gains derived from the sales of property. I see. So you're saying the gain is the gross income, not the sales price. Yes. The gain is the amount of gross income that is omitted from the return. And gain can be ---- omit can be understated either by understating the gross proceeds or by overstating the basis of the property. Now I understand. Thanks. Thank you, counsel. Thank you. Even though your time has ---- is way over, I really do think the Court should have calendared this one for 20 minutes per side, and we'll give you a minute or two for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Steve Mather, appearing for the appellees, Bakersfield Energy Partners and the petitioning partners of that partnership. I'm not sure I'm going to need 20 minutes in this because I think you've kind of done my job for me in the questions that you raised with Ms. Oppenheimer in the appellees' presentation. Well, don't go so fast. Okay. Ms. Oppenheimer referred us to Section 61, which is the definition of gross income, and said that gain is gross income. What's wrong with that? Well, it is true that gain is gross income. In fact, it's our position that you can define gross income however you want to define it because the Supreme Court has been very specific on this precise issue that there needs to be an omission, and that means there has to be something left out. And the issue exactly presented in the colony case was a gain issue, and the Supreme Court looked at that issue and said, we don't think it means overstating basis. The statute doesn't say that any understatement of gross income is subject to the longer statute of limitations. It says an omission of gross income. And I think the government is really kind of adopting another O word in the context of this case. What you're saying is there's no omission of any statement of gain here, therefore there's no omission of any income, even taking her definition. Yes, I'll concede whatever definition of gross income she wants to apply, because there is no omission in this case. Say that, just say what you said again in different words that got past me. She can define gross income however she wants. I don't care how gross income is gain. Gross income is gain. You did not state the $23 million as gain, so it was an omission. The $23 million is not an omission because it's on the return. It is not left out of the return. As Your Honor suggested in going through the schedule on the return itself, it's very clearly present on the return. And what the colony case says is that something that is on the return is not an omission. In general, and I believe, again, Your Honor, you were right on point with this, is that generally speaking what this statute is about is the IRS should have more time to audit when the amounts that are left out of the return are large in proportion to the amounts that are on the return. Well, all of our amounts are on the return. And that was precisely what the Supreme Court was saying in Colony is all these amounts are on the return. There is no special disadvantage that the IRS is placed under when all the amounts are on the return. In fact, one of the discussions was the difference, well, what about the deductions? What about deductions if they overstate deductions? And the Supreme Court specifically addressed that in Colony and said, we don't see why the overstatement of basis should be any different than the overstatement of a deduction because they're both on the return. And the IRS has adequate opportunity to address those points. So one of the things that I would like to comment on with respect to the government's arguments is that it seems to be based almost entirely on the fact that the Supreme Court in Colony said that the definition under the old code, the 39 code, was ambiguous and the definition under the new code, the current code, is unambiguous. Well, as the Court has pointed out, the language is identical, but with the exception that the new code has two new definitions, more specific definitions added to it. The one is in little letter I that defines gross receipts in the context of a trade or business. And the other one is in little ii, which defines what an omission is in terms of items that are considered to be adequately disclosed. Well, Colony defined omission. It is entirely plausible, I think almost compelling to suggest, that what the Supreme Court was talking about in Colony when it said the new section is less ambiguous than the old section is they were looking at little ii, which defines omission, which is what the Supreme Court was doing in Colony. The Supreme Court was not defining gross receipts. So why would they refer to little i, which defines gross receipts, when they're saying now it's less ambiguous? The only reason that the Supreme Court devoted time, I guess, to the examination of the legislative history is because it determined that there could be ambiguity in the statute and that it found none, essentially, and that omits really does mean omits. And the rule is exactly what the plain reading would lead you to believe the rule is, is that when they leave things out, the IRS gets more time. Could you address how what you think we should say to CC&F Western Operations, the First Circuit case? It looks as though the First Circuit is most unhappy with Colony and suggests that it's out of date and that Colony should be confined and that, oh, what do they call it, a clue for Sherlock Holmes on the return isn't going to prevent something from being an omission. Well, I think it's important in the CC&F case to define what the holding of that case is. In CC&F, the court found that there was an omission, that there was an amount left out of the return. It's specifically stated in there. It adds a lot of kind of fancy language to say, well, we aren't sure if Colony is what it used to be. But the bottom line in the case, the First Circuit says there was an omission. They left out $52 million of gain. So if we go back to the schedule on the tax return, our line that says $23 million in CC&F, their position was it should have said $80 million. And so there is an amount omitted in that case. And CC&F, was the full sale price reported on the top line before basis? No. That was 50, I believe it was $52 million, was understated or omitted, more particularly, from that line on the tax return. Then the First Circuit goes on to say, well, now we have this new adequate disclosure provision and little i.i. of the statute, so let's see if under that definition of omission, even though the number isn't on the return, there may be circumstances under which a number that's not on the return is still not considered an omission. And that's what the CC&F case is about, is examining whether it's one of those cases where a number that's not on the return is still not considered an omission because of that special rule. And similarly, I think that the government's argument – It's not true, incidentally, that the first transaction from the old baker's field to the new baker's field would not produce tax on this gain. And so if the $16 million basis stood up and tax on $16 million of gain would have just been avoided? No. In fact, it's contrary to the record in this case. What happened in the first transaction was that some of the baker's field partners sold their interest, their partnership interest to another entity that became, in effect, the partner of baker's field energy partners. The reason they did that, just as an aside, is that one of the partners wanted out and they were restructuring the ownership because their deal had apparently fallen through and they were going to have to continue to hold these interests for a long term. And so this was a manner in which they could address removing this one partner from the partnership. But from the tax consequence, what the partners did is the partners sold a partnership interest in which they had very little basis to the new entity for the $16 million, and they had a $16 million gain, and as the tax court found in this case, those partners have been reporting a portion of that gain under the installment method ever since. So what you're saying is the way the basis got arrived at is the partners who wanted to unload, unloaded for $16 million, and those individual partners are paying income taxes on that $16 million of capital gains? Yes, absolutely. So the government wants two bites of the apple? They do in this case. I believe in the government's zeal to label this. Tell me how to get this so it's really clear from the record. I think the tax court decision actually said what you said, but it was kind of dense. Yes. I think there's only one sentence. It says that the partners had been reporting the gain on that $16 million on the installment basis ever since 1998. In fact, this highlights a problem with the government's interpretation in this case, because as Judge Vea said, the government wants their money twice. Well, if they get six years to audit, we only get three years to claim a refund. So we would be six years down the road, as we are in this case, when the IRS issues are noticing, no, it's not this way, and we can't even go back to reclaim all of the tax that we have. And that's why there's a symmetry in the three years to audit, three years to refund statutes, that the government wants to destroy in this case, but it destroys it by double-taxing our partners. Oh, so you only get three years to claim a refund, but if they get six years at the tax court? Right. Then I've got three years where I've paid tax on gain that now they say didn't happen. But that's a three-year limitation on claims that they can waive. And we will ask Ms. Oppenheimer whether she would waive it. Okay. Well, that would be unique. One other point. I see that I'm over, but if you'll allow me, to address just the issue of the difference between the estate tax provision that references items and the income tax that we're dealing with here that represents, or that references amounts. And the government tries to say that that leads to a different conclusion. Well, I don't think the word amounts matters much one way or the other, but the point is, and I think this reinforces the fundamental purpose of this provision, actually, is that when you have an estate tax return, what you're taxing is all of the assets that are held by the decedent when they die. So when the court or when Congress, and this is in the legislative history, looked at it and said, well, when is the IRS at a disadvantage on an estate tax return? And the conclusion, and I think correctly, was that, well, if you don't say you own a house. I mean, if your house is omitted from the return, well, then the IRS is at a special disadvantage because they don't even know you have a house. Oh, so the analogy to skimming is leaving out an item. Yeah. So, but when you list the house and you say it's worth $500,000, well, the government, their job in an estate tax return is to decide if the taxpayer has correctly reported values. And so if you list the house and you say it's worth $500,000 and the government says it's worth a million, well, that's not the kind of omission that gives them a disadvantage. And that's why the estate tax provision is different than the income tax provision, and that's why there's a difference between items for estate tax. It's like the diamond brooch that goes right from the dead lady's jewelry case to the live lady's purse. That's right. That's it exactly. Whereas if the decedent puts it on the return and says, oh, it's worth $10, well, it may be worth a million dollars, but at least if it's on the return, the IRS is not at the special disadvantage that Congress was after when they said omissions. Now, something that's not there. Thank you, counsel. Does the IRS have a position regarding waiving the statute of limitations on the claim period for the partners who have been paying on an installment basis to recover what their payments were, if you are correct? I have no authority to waive the statute of limitations. That should be taken up with the IRS. I believe that opposing counsel has misdescribed the transaction in this case. Basically what happened was some of the partners in Bakersfield Energy formed a new partnership, Bakersfield Resources, by putting cash and property worth $19 million in Bakersfield Resources. Bakersfield Resources then used this money to buy these partners' interests in Bakersfield Energy, which terminated the old Bakersfield Energy partnership. So then by making this 754 election, they were able to use this $19 million that these partners put into Bakersfield Resources and it became Bakersfield Resources basis, and this became the basis of the new Bakersfield Energy. Did the old partnership or the new one actually buy out departing partners and pay them $16 million cash? No. The old partnership was terminated by the fact that — Did either entity pay the departing partners $16 million in cash? No. Basically — What did the departing partners get for their interests? Well, the departing partners — the departing partners were paid by Bakersfield Resources and not by Bakersfield Energy. Did they — and are they paying capital gains? Did they get paid $16 million? Yeah, they were paid, yes, by Bakersfield Resources. And are they paying capital gains on $16 million? That information is not in the records, Your Honor. So — I thought that's what that sentence meant in the tax court decision, that they're paying taxes on the installment basis. Well, they are paying taxes on the installment basis, but their taxes are being paid based on the sale by the new — the new Bakersfield Energy sold oil and gas reserves. The oil and gas reserves, what we say was underreported, you know, they sold the oil and gas reserves, and we claim that the sale was underreported. And they are paying taxes on the installment basis on their proportionate share of the income from the sale, according to, you know, the opinion. But this whole transaction involving Bakersfield Resources that enabled a stepped-up basis to occur, what is being paid on that is not something that is in the record. Thank you. I also think that what taxpayers said about C.C. and F. Western is inaccurate. In C.C. and F. Western, there were reported certain gross receipts. The gross receipts on that case were understated because the court concluded that indebtedness of income should have been included in the gross receipts. So this was not a case of complete omission of an item from the return. It was a case where the gross receipts was underreported because an item should have been included that wasn't. Basically, indebtedness of income item. It's our position that the understatement of gross receipts is no different from an overstatement of basis. They are all encompassed by the phrase, omission from gross income of an amount properly includable therein. So what you're saying is your adversary was right when he said the top line, the gross receipts, was false, and the C.C. and F. return, it was low by $52 million. Right. But that that's indistinguishable as a practical matter from the second line, basis being high. That's correct, Your Honor. Got it. Okay. And my final point is that it's true that 6501E uses the word omission. It doesn't use the word understatement. It also uses the word amount, and it uses the word amount repeatedly. Let me back up to what you said about C.C. and F. I'm imagining myself, I've never been a tax auditor, but I've done defense work where it's the same sort of thing. You're looking over people's papers to see if they're trying to fool you. If somebody tells me that their gain is $5,872, hardly worth the time to do anything with it, if that's all I know. If they tell me that they sold something for $9,000 and something, and they had a basis of $4,000 and something, hardly worth fooling with. But if they tell me that they had no income this year, or they tell me that they sold something for $50 million, but they had such a high basis in it that they made nothing, that's worth fooling with. It's worth looking into. I don't really see why we should be indifferent to whether they're low on gross receipts or high on basis. If the gross receipts number is really high, it's a signal, but it's worth looking at for possible audit. Well, that's our position, too, Your Honor, that there's no difference between understatement of gross receipts and overstatement of basis, that the underreporting of capital gain is an omission of an amount includable in gross income, regardless of whether it's the gross proceeds that are underreported or the basis that's overstated. Thank you, Your Honor. Thank you, counsel. Ten-minute recess.
judges: Kleinfeld, Bea, Ikuta